IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**LORI AND JOHN MURRAY,**
**Individually and on behalf of all others**
**Similarly situated,**

      Plaintiffs,

v.                                                        CIVIL ACTION NO.: 3:21-CV-68
                                                                    (GROH)

**STEVE KEMPER BUILDER, LLC,**

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFFS' MOTION TO REMAND

Currently before the Court is the Plaintiffs' Motion to Remand, filed on May 11, 2021. ECF No. 3. Therein, the Plaintiffs move the Court to remand this class action case to the Circuit Court of Jefferson County, West Virginia. The Defendant filed a Response in opposition on May 25, 2021. ECF No. 9. The Plaintiffs filed a Reply in support of the motion on June 3, 2021. ECF No. 10. Accordingly, the matter has been fully briefed and is ripe for adjudication. For the reasons stated below, the motion is **GRANTED**.

### I. BACKGROUND

This case arises out of an allegedly defective roof repair the Defendant made on the Plaintiffs' residence in October 2019. Plaintiffs Lori and John Murray allege that on October 3, 2019, they entered a contract with the Defendant for the Defendant to replace their roof shingles with shingles from an Owens Corning catalog and make other storm

related repairs.  ECF No. 1-1 at 8, ¶¶ 10, 11; see id. at 28.  The Defendant also promised the Plaintiffs the shingles would withstand the winter.  Id. at 9, ¶ 16.  The Defendant installed the shingles on October 26, 2019, yet by October 31, 2019, many of the new shingles had been ripped off by the wind.  Id. at 9, ¶¶ 17, 18.  The new shingles were ripped off by the wind again on November 27, 2019.  Id. at 9, ¶ 20.  Both of the times that the shingles were ripped off, the Plaintiffs notified the Defendant, and he would return to the property to "hand seal" the new shingles.  Id. at 9, ¶¶ 19–20.  On January 15, 2020, the Defendant sent the Plaintiffs a final invoice for $41,790.75 [id. at 9, ¶ 21], which they paid on January 17, 2020.  Id. at 10, ¶ 22.  The invoice included $15,425.40 for 34.33 square feet of "Roofing IKO" shingles.  Id.; see id. at 30.  The Plaintiffs allege that the IKO shingles are of a poorer quality than the agreed Owens Corning shingles per their contract.  Id. at 11, ¶ 32.

The Plaintiffs allege that throughout the spring of 2020, more shingles were ripped off during windstorms.  Id. at 10, ¶ 30.  On April 3, 2020, the Defendant stated that it would replace the "back slope" of the Plaintiffs' roof with new IKO shingles if they would sign a release.  Id. at 11, ¶ 33.  The Plaintiffs refused to sign the release, and the Defendant made no further repairs on their roof.  Id. at 11, ¶ 34.

On April 1, 2021, the Plaintiffs initiated this suit by filing a class action complaint in the Circuit Court of Jefferson County, West Virginia, against the Defendant.[1]  See generally id.  The complaint states five causes of action: (1) breach of express warranties, (2) breach of warranty and breach of contract in violation of the Magnuson-Moss Warranty

---

[1] The proposed class definition includes "all consumers, who, after April 1, 2016, were West Virginia residents that entered into a contract with Steve Kemper Builder, LLC, for exterior storm restoration or home renovations."  ECF No. 1-1 at 22, ¶ 85.  The Plaintiffs allege that upon information and belief, the Class consists of over fifty members [id. at 22, ¶ 86], who seek the same relief as the Plaintiffs.  Id. at 24, ¶ 96.

Act ("MMWA"), 15 § U.S.C. 2301 et seq., (3) breach of warranty in violation of W. Va. Code § 46-2-101 et seq., (4) unfair and deceptive acts and practices in violation of W. Va. Code § 46A-6-101 et seq. and W. Va. CSR § 142-5-3 et seq., and (5) violations under the West Virginia Storm Scammer Consumer Protection Act ("SSCA"), W. Va. Code § 46A-6M-1 et seq.  For relief, the Plaintiffs seek damages, including consequential damages for the "continued damage to their roof and loss of real estate value" [id. at 15, ¶ 59], costs, attorney fees, and statutory damages.  Id. at 26.  Additionally, the Plaintiffs seek an award against the Defendant for its unlawful practices that caused them "aggravation, annoyance, and inconvenience."  Id.

On May 5, 2021, the Defendants timely removed the case to this Court based upon diversity jurisdiction under 28 U.S.C. § 1332.  See ECF No. 1.  On May 11, 2021, the Plaintiffs filed the instant motion, requesting that the Court remand the case back to the Circuit Court of Jefferson County.

## II. LEGAL STANDARD

A defendant may remove a civil action from state to federal court when the latter has federal subject matter jurisdiction.  See 28 U.S.C. § 1441.[2]  Either diversity or federal question jurisdiction satisfies this requirement.  Id.  Federal district courts enjoy diversity jurisdiction over cases between citizens of different states when the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. § 1332(a).

The removing party bears the burden of establishing that jurisdiction is proper.  See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Moreover, courts have long recognized that a plaintiff is the master of her claim.  See Okla. Tax

---

[2]    The Defendant did not remove this action under 28 U.S.C. § 1453, which governs the removal of class actions.  See ECF No. 1.  Accordingly, the Court reviews the complaint under 28 U.S.C. § 1332(a).

Comm'n v. Graham, 489 U.S. 838 (1989).  Therefore, "if [a plaintiff] chooses not to assert a federal claim . . . or properly joins a nondiverse party, defendants cannot remove the action to federal court on the ground that an alternative course of conduct available to the plaintiff would have permitted removal of the case." 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice and Procedure § 3721, p. 59 (4th ed. 2009).

Significantly, the Fourth Circuit has plainly stated that "if federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d 148, 151 (citing In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993); Cheshire v. Coca–Cola Bottling Affiliated, Inc., 758 F. Supp. 1098, 1102 (D.S.C. 1990)).  This conclusion is consistent with the well-established principle that "[w]e are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated" and that "if federal jurisdiction is doubtful, a remand to state court is necessary." Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted).

### III. DISCUSSION

The Plaintiffs' sole argument is that diversity jurisdiction is lacking because the amount in controversy requirement has not been met.  The amount in controversy is "what the plaintiff claims to be entitled to or demands." Scaralto v. Ferrell, 826 F. Supp. 2d 960, 967 (S.D.W. Va. 2011); see Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005) ("The demonstration concerns what the plaintiff is claiming . . . , not whether the plaintiff is likely to win or be awarded everything he seeks.").  A defendant's removal cannot be based on speculation; rather, it must be based on facts as they existed

4

at the time of removal.  Seifert v. Nationwide Mut. Ins. Co., 2007 WL 1381521, at *1 (N.D. W. Va. May 9, 2007) (citing Varela v. Wal-Mart Stores, East, Inc., 86 F. Supp. 2d 1109, 1112 (D.N.M. 2000)).

Here, the complaint does not make a specific request for damages.  Thus, it is the Defendant's burden to show that the amount in controversy satisfies the requisite jurisdictional amount by a preponderance of the evidence.  Seifert, 2007 WL 1381521, at *1 (citing Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 23 (S.D. W. Va. 1994)). When a civil action originated in state court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court . . . ." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1988).  To determine the amount in controversy, the Court must make an independent evaluation of the record and may consider "the complaint, the removal petition and other relevant matters in the file."  Mullins, 861 F. Supp. at 23.  "If the court thinks that a reasonable plaintiff would claim more than $75,000, then the defendant has met its burden of proof." Trammell v. Sylvanus Group, LLC, No. 5:19-cv-419, 2020 WL 1169969, at *1 (S.D.W. Va. Mar. 10, 2020).  Accordingly, the Court reviews the case record with these standards in mind.

In its response, the Defendant argues that in addition to seeking damages for the price of the contract, $41,790.75, a reasonable reading of the complaint and its exhibits indicate that the Plaintiffs seek damages for: (1) a roof replacement with a higher quality shingle than they were originally charged for, (2) a "material" loss of real estate value to their home as a result of the work performed by the Defendant, (3) attorney fees, (4) statutory damages, (5) their aggravation, annoyance, and inconvenience, (6) damages to

the interior of their home, (7) their pool, (8) their pool equipment, (9) their pool liner, and (10) their landscaping, gardens, and flower beds.  ECF No. 9.  The Defendant avers that these additional damages and costs exceed $33,209.25 by a preponderance of the evidence, and therefore, the total amount in controversy exceeds $75,000.00 and satisfies the requisite jurisdictional amount.  Id. at 7–8.

In response to the Defendant's arguments, the Plaintiffs aver that the only amount in controversy definitively supported by the contract is $15,425.40, the value listed in the invoice for roofing materials, because the "complaint is clearly focused on the roofing materials, specifically the shingles."  ECF No. 10 at 3.  The Plaintiffs further argue that the Defendant's assertions that the amount in controversy will increase because the higher quality shingles are more expensive, a "reasonable plaintiff would apportion a significant number to a material loss of real estate," attorneys' fees will be "substantial," and compensation for aggravation, annoyance, and inconvenience will be of "significant value" are speculative.  Id. at 5–7.

Upon careful consideration of the record, the Court finds that the Defendant has not met its burden of proof with regard to the amount in controversy.  First, the Court agrees with the Plaintiffs that the price of the contract is not the only definite amount in controversy.  The contract included the prices for the Defendant's repairs to the property's sidings and gutters, for which the record shows that the Plaintiffs are not claiming damages.  See ECF No. 1-1 at 30.  While the Court agrees with the Defendant that the email correspondence between Plaintiff Lori Murray and the Defendant shows that the

Plaintiffs are seeking a full roof replacement,[3] "[a]s a general rule, the proper measure of damages in such cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been in if properly done under the agreement contained in the building contract." Steinbrecher v. Jones, 151 W. Va. 462, 475, 153 S.E.2d 295, 304 (1967). Although the cost of repairing the Plaintiffs' roof arguably exceeds the cost of the IKO shingles, the Defendant has not provided any evidence of what that cost would likely be. Thus, the only definite amount in controversy supported by the record is $15,425.40.

Second, the Defendant did not provide any evidence to support its claims as to its assertions regarding the cost of installing the Owens Corning Shingles, loss in real estate value, and consequential damages for the Plaintiffs' interior, pool, pool equipment, pool liner, landscaping, gardens, and flower beds. For example, to support its assertion that the damages increase because the Plaintiffs seek to replace the IKO shingles with Owens Corning shingles, the Defendant merely states that the "reasonable inference based on the Plaintiffs' allegations [of Owens Corning] being an allegedly higher quality shingle" is that it "costs more than the IKO shingles." ECF No. 9 at 4–5. While this might be so, the Defendant does not provide a number for this cost, which, as the Plaintiffs aver, the Defendant should be able to do because it is in the roofing industry. Similarly, the Defendant merely asserts that the damages for the loss of real estate and consequential damages are "significant" and does not provide the Court with any competent proof or tangible evidence. Thus, the Court finds that the Defendant has not met its burden of

---

[3] However, the Court notes that the email correspondence also shows that Ms. Murray considers a "full replacement" to cost at most $15,000.00. See ECF No. 1-1 at 58 (stating that she did not have "$10-15k to replace my roof").

7

proof for these damages.  See Seifert, 2007 WL 1381521, at *2 (granting the plaintiff's motion to remand because the defendant did not offer any "competent proof or tangible evidence").

Without competent proof or tangible evidence regarding those damages, the Defendant cannot establish the requisite amount in controversy based on the cost of the IKO shingles and the Plaintiffs' claims for attorneys' fees and compensation for aggravation, annoyance, and inconvenience.  See Briggs v. Nationstar Mortg. LLC, No. 3:15-CV-24, 2015 WL 2354605, at *6 (N.D.W. Va. May 15, 2015) (stating that the potential amount of attorneys' fees is speculative because the amount depends on factors the court "has no evidence or argument concerning now"); Bank of Charles Town v. Encompass Ins., No. 3:10-CV-102, 2010 WL 4806884 (N.D.W. Va. Nov. 18, 2010) (denying motion to remand because "with actual damages in an amount of approximately $16,000, the attorney's fees are simply not sufficient to achieve the jurisdictional standard"); Seifert, 2007 WL 1381521, at *2 (remanding case where specific damages were $2,232.45 and defendant argued that punitive damages, attorney's fees, and compensatory damages for aggravation, annoyance, and inconvenience established the requisite jurisdictional amount).  Accordingly, this Court is without jurisdiction, and remand is required.

### IV. CONCLUSION

Based upon the foregoing, the Plaintiffs' Motion to Remand is **GRANTED** [ECF No. 9], and the above-styled civil action shall be and is hereby **REMANDED** to the Circuit Court of Jefferson County, West Virginia, for all further proceedings.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record and to the Circuit Clerk of Jefferson County, West Virginia.  The Clerk is further **DIRECTED** to remove this civil action from the Court's active docket.

**DATED**: September 13, 2021

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE